# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### EASTERN DIVISION

RAY TURNER,                           )
a/k/a AUTHOR X                        )
a/k/a/ AUTHUR R. TURNER               )
                                      )
    Plaintiff,    )
                                      )
vs.                                   )          No. 1:15-cv-1135-JDT-egb
                                      )
DERRICK SCHOFIELD, ET AL.,            )
                                      )
    Defendants.   )

## ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER.
### FOR PARTIAL DISMISAL,
### AND DIRECTING THAT PROCESS BE ISSUED AND SERVED
### ON REMAINING DEFENDANTS

On June 2, 2015, Plaintiff Ray Turner, a/k/a Author X, a/k/a Authur R. Turner, ("Turner"), who is confined in the Trousdale Turner Correctional Complex in Hartsville, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C.A. § 2000cc *et seq.*, and a motion for leave to proceed *in forma pauperis* for actions that occurred at the Northwest Correction Complex ("NWCX") in Tiptonville, Tennessee. (ECF Nos. 1, 2 & 3.) On June 3, 2015, the Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act, 28 U.S.C. §§ 1915(a)-(b) on June 26, 2015. (ECF No. 5.) The Clerk shall record the defendants as Tennessee Department of Correction ("TDOC") Commissioner Derrick Schofield, TDOC Assistant Commissioner Tony Parker, TDOC Assistant Commissioner William Gupton, TDOC Director of Food Services Jane Amonett, TDOC Cook

Chill, NWCX Warden Mike Parris, NWCX Fiscal Director Mark Watson, NWCX Food

Manager V. Cadney, NWCX Assistant Food Manager Susan Redden, NWCX Assistant Food

Manager Rick Duncan, NWCX Former Chaplain M. Lavender, NWCX Assistant Chaplain Kurt

Gross, NWCX C.C.O. Bradley Canada, and NWCX Health Administrator Recie Yanders.[1]  All

defendants are sued in their official and individual capacities.

## I. THE COMPLAINT

Turner filed a 70 page complaint with over 400 pages of exhibits and attachments, many

duplicating allegations already set forth in the complaint.  The Court will  highlight the specific

factual issues provided by Turner.

On February 14, 2013 and June 6, 2013, Turner signed a Therapeutic Diet order about his

food allergies: beans and peas.  (Compl at ¶¶ 20-21, ECF No. 1.)  On September 3, 2013, Turner

signed a religious contract for a Halal religious diet.  (*Id*. at ¶ 23.)  Turner alleges that on July 12,

2013, Cpt. McGage, who is not a party to this complaint, violated his First Amendment rights by

not serving him, or the other inmates observing Ramadan until after 9:00 p.m., which resulted in

his not having food for twenty-four hours.  (*Id.* at ¶¶ 24-31.)

On September 14, 2013, Turner signed a Therapeutic Diet order about his food allergies:

beans and peas.  (*Id.* at ¶ 33.)  Turner alleges that on September 13, 2013, Defendant Redden

contacted Kaye F. Moore, who is not a party to this complaint, encouraging her "to deny Muslim

inmates their Halal My Own meal per the Religious Diet contract."  (*Id.* at ¶ 34, footnotes

---

[1]The complaint also purports to sue the TDOC Dietician.  Service of process cannot be made on a fictitious party.  The filing of a complaint against a "John Doe" defendant does not toll the running of the statute of limitation against that party.  *See Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996); *Bufalino v. Mich. Bell Tel. Co.*, 404 F.2d 1023, 1028 (6th Cir. 1968).  The Clerk is directed to terminate the reference to the TDOC Dietician defendant on the docket.

omitted.)  On December 7 and December 10, 2013, Turner was not served a meal that he could eat due to both religious and health reasons.  (*Id*. at ¶ ¶ 38-44.)

Tuner alleges that Defendant Cook Chill and TDOC has a contract to provide all the food supplied for all state agencies involved in the statewide comprehensive food program.  (*Id.* at 57.)

Turner alleges that over a period of years from October 16, 2014 through April 11, 2015, the Defendants Amonett, Cadney, Redden, Duncan, Parris, Watson, and the TDOC Dietician have failed to provide him and other inmates with a Halal diet, but are charging those inmates for special diet.  (Compl. at 57, ECF No. 1.)  Turner alleges that Defendants Cadney, Redden, and Duncan refuse to provide him with an adequate substitute for his food allergies to bean, peas and there byproducts.  (*Id.* at 60.)  Defendants Amonett, Cadney, Redden, Duncan, Parris, and Watson served Turner food that they knew he could not and would not eat.  (*Id.* at 61.)

Turner's numerous examples highlight these allegations.  On October 6, 2014, Turner contends they were serving pork on the special diet line.  (*Id.* at 8.)  When Turner informed Cadney about them serving pork on the religious line, she stated, "'I don't want to hear it."  (*Id.* at 9.)  Turner did not eat at all on that date.  (*Id.* at 10.)  Food service continued to serve pork in the religious line.

On January 13, 2015 Turner was given a religious diet tray with vegetarian chili and green beans.  (*Id.* at 14.)  Defendant Duncan stated that they had this problem before, but Defendant Cadney had called the clinic and determined there was not enough soy in the veggie chili to hurt Turner.  (*Id.*)  Turner said that it would kill him if he ate it and was, therefore, not served lunch.  (*Id.*)  This happened again on January 15, 2015, involving Defendant Redd.  (*Id.* at 14-15.)

Turner communicated with Defendant Yanders regarding his food allergies. (*Id.* at 15, *see also* Ex. M.) On January 23, 2015, Defendant Yanders states that she did not have anything in her records regarding Turner's allergies and that he should go to sick call to get documented reaction through properly conducted testing by a doctor. (*Id.*) On February 25, 2015, Turner met with Defendant Yanders. (*Id.*at 28.) At that meeting Defendant Yanders told Turner that they have a new procedure in place that requires him to get a therapeutic diet because of his food allergies. (*Id.*at 29.) Turner said he didn't need a therapeutic diet because he was on a Halal diet and his allergies were documented by the kitchen. (*Id.*) Defendant Yanders became angry and yelled and pointed her finger at Turner. (*Id.*) Turner says that he had signed up for sick call regarding a headache and rash, but Defendant Yanders changed it to discuss his therapeutic diet because, she said, that he never talks to his doctor about his food allergies. (*Id.*) Turner contends that Defendant Yanders retaliated against Turner in regards to job placement due to grievances he filed on the kitchen staff. (*Id.* at 30.)

On February 11, 2014, Turner received a letter from Defendant Amonett stating they were in contact with Dr. Ossama Bahloul regarding food service. (*Id.* at 36, *see also* Ex. R.) Turner alleges, that Defendant Amonett has refused to contact anyone from the Nation of Islam, nor has she responded to request for a Halal menu for Nation of Islam Muslim inmates. (*Id.*)

On January 15, 2015, Turner received in-house correspondence from Defendant Parris providing Turner a copy of the Halal menu. (*Id.* at 38-39.) Turner contends that there are pork items in these items and that he has not received documentation that the meat is Halal certified. (*Id.* at 40.)

On March 13, 2014, Turner was in the kitchen waiting to talk to someone about his meal. (*Id.* at 24.) Defendant Cadney was informed about Turner's dietary needs and told him to wait

his turn.  (*Id.* at 41.)  While Turner was waiting for his tray, Defendant Cadney called Sgt. Lumdon, who is not a party to this complaint, into the Chow hall.  (*Id.*)  Defendant Cadney told Sgt. Lumdon that she filed the job drop papers that got Turner removed from the kitchen; however, the job drop paperwork was filed using Assistant Food Manager Mike Young's name. (*Id. see also* Ex. N.)  On April 15, 2014, Turner pled guilty to a write-up, but the disciplinary board did not give him a job drop.  (*Id.*)  Even though the paperwork did not state that he was dropped from the job, Defendant Cadney as well as Food Stewart Linda and Food Steward Bell turned Turner away from doing his work in the kitchern.  (*Id.* at 26.)

On April 20, 2015, Turner was written up by Defendant Canada for disrespect while Turner was trying to use the library.  (*Id.* at 30-31.)  Turner contends that Defendant Canada filed the write-up in retaliation for grievances Turner filed against the kitchen staff.  (*Id.* at 31.)

Turner alleges that Defendants Gross, Parris, Watson, and TDOC are refusing to issue passes to Muslim inmates in the Nation of Islam that use "X" in their name and refuse to issue passes to inmates that are trying to attend a religious services of a faith not listed on TOMIs. (*Id.*at 58.)  Further, Defendant Gross has refused to recruit outside religious cultures that are non-Christian and that Defendants Gross and Parris, for a two month period of time, sent officers to Turener's services and classes to disrupt them.  (*Id.* at 62-63.)

Specifically, on June 5, 2014, Defendant Lavender released a Memorandum about the observance of Ramadan at NWCX.  (*Id.* at 27, *see also* Ex. X.)  On June 30, 2014, Defendants Lavender and Gross refused to allow inmates not listed on TOMIS as Muslim/Islamic to take part in the fast.  (*Id.* at 27, *see also* EX. J.)  In August 2014, Defendant Lavender and Gross only issued passes to religious services for people submitting requests for their full names and would not accept names with X or initials.  (*Id.* at 27-28.)  Turner wrote a letter to Defendant Schofield

regarding the failure of Defendants Parris, Lavender, and Gross to issue passes to himself and other inmates.  (*Id.* at 34, *see also* Ex. I.)

Turner alleges that he has been retaliated against by Defendants Cadney, Redden, Duncan, Lavender and Gross.  (*Id.* at 60 & 61.)  Defendants Schofield, Parker, and Gupton have failed to properly investigate the retaliation against him.  (*Id.* at 61.)  On January 9, 2015, Turner sent a letter to Defendants Schofield and Pariss about the issues facing Muslim inmates.  (*Id.* at 14, *see also* Exs. J & K.)  Defendants Parris and Watson have failed to take action to curb a pattern of Religious and Race discrimination by TDOC staff.  (*Id.*)

On April 6, 2015, Turner asked C/O Green, who is not a party to this complaint to open his door so he could use the restroom.  (*Id.* at 54.)  Turner was forced to wait 30 minutes, and as a result of the wait, urinated on the wall.  (*Id.* at 55.)  Turner was written up for creating a disturbance, but contends the waiting for 30 minutes was cruel and unusual punishment.  (*Id.*)

Turner alleges the TDOC is currently housing Segregated Inmates on the main compound at NWCX in violation of TDOC policy.  (*Id.* at 63.)  As a result the Segregated inmates are propping their door to go into other units and rob and beat non-gang members.  (*Id.* at 64.)  Turner contends that TDOC is using the segregated inmates as an excuse to deny all inmates in Unit N14 recreation time, access to law library and Pod time.  (*Id.*)  On May 16, 2015, a white inmate that had been housed in segregation cell on until N14 was stabbed because the pod officer that was working in unit N14 did not do a security check on the segregated inmate's cell doors.  (*Id.*)

Hairston seeks injunctive relief, including immediate examination by a qualified physician, provision of the prescribed diet, and expungement of the disciplinary convictions.

Hairston also seeks compensatory and punitive damages against Defendants Cox, Parson, Futrelle, Joy, Hembree and Flint

In Turner's request for relief he seeks numerous injunctions from the court including requests to order TDOC to provide a Halal diet for Muslim inmates, to provide himself a diet that comports with his religious beliefs and allergies, to get his job back, to ban Defendants Cadney, Redden and Duncan from working in food service positions within TDOC, to require officials to follow policies which will prevent religious discrimination from the Chaplain, to remove Defendant Gross from his position as religious coordinator, to order the TDOC to hire Muslims, Jews, and Rastafarians to the position of religious service coordinator, to hire Muslims to work as servers in the diet line, to provide any inmate who has signed the religious list the right to fast, to remove Defendant Yander from his position, and to remove segregated inmates off the main housing compound at NECX. (*Id.* at 64-67.) Turner also seeks punitive damages against all Defendants. (*Id.* at 68-69.)

## II. ANALYSIS

A.     Screening and Standard

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

> (1)     is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2)     seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); see also 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the court applies the standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally. Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325, 328-29 (1989)).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327, 109 S. Ct. 1827 (interpreting 28 U.S.C. § 1915). Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, *Iqbal*, 129 S. Ct. at 1949-50, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness. *Neitzke*, 490 U.S. at 327-28, 109 S. Ct. 1827.

*Id.* at 471.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants and prisoners

are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)) (alteration in original); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

B.   § 1983 Claim

Turner filed his complaint pursuant to actions under 42 U.S.C. § 1983 which provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the

District of Columbia shall be considered to be a statute of the District of Columbia.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

### 1. Request for Injunctive Relief

"Article III of the Constitution limits the judicial power to the adjudication of 'Cases' or 'Controversies.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 137 (2007) (citing U.S. Const., art. III, § 2). This is "a cradle-to-grave requirement that must be met in order to file a claim in federal court and that must be met in order to keep it there." *Fialka-Feldman v. Oakland Univ. Bd. of Trs.*, 639 F.3d 711, 713 (6th Cir. 2011). "[A] federal court has no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (internal quotation marks omitted); *see also Coalition for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 458 (6th Cir. 2004) ("Under the 'case or controversy' requirement, we lack authority to issue a decision that does not affect the rights of the litigants."); *Sw. Williamson Cnty. Cmty. Ass'n, Inc. v. Slater*, 243 F.3d 270, 276 (6th Cir. 2001) (same). The mootness question turns on whether a federal court can afford a litigant any "effectual relief." *Coalition for Gov't Procurement*, 365 F.3d at 458.

After the filing of the complaint, Turner submitted a change of address showing that he is now incarcerated at the Trousdale Turner Correctional Complex, not at the NECX. (ECF No. 7.) Therefore, Plaintiff's prayer for numerous requests for injunctive relief including religious treatment, diet, staffing requests and job placement at the NECX are moot. *Moore v. Curtis*, 68

F. App'x 561, 562 (6th Cir. 2003) (claims for declaratory and injunctive relief against prison staff moot when inmate transferred to another facility); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (same); *Tramber v. Pleasant*, No. 4:12CV-P31-M, 2012 WL 4594339, at *5 (W.D. Ky. Oct. 2, 2012) (inmate's claim for a transfer and medical care moot when he was transferred to another facility).

2.    *Claims Against Defendants in their Official Capacity/ State of Tennessee*

Claims against Defendants in their official capacity are properly asserted against their employer, the State of Tennessee.  Turner cannot sue the State of Tennessee under 42 U.S.C. § 1983.  The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  The Eleventh Amendment has been construed to prohibit citizens from suing their own states in federal court.  *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Employees of Dep't of Pub. Health & Welfare v. Mo. Dep't of Pub. Health & Welfare*, 411 U.S. 279, 280 (1973); *see also Va. Office for Protection & Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011) ("A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation.  But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." (citations omitted)).  By its terms, the Eleventh Amendment bars all suits, regardless of the relief sought.  *Pennhurst*, 465 U.S. at 100-01.  Tennessee has not waived its sovereign immunity.  Tenn. Code Ann. § 20-13-102(a).  Moreover, a state is not a person within

the meaning of 42 U.S.C. § 1983. *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)..

### 3.    Claims against Private Actor

Turner states claims against Cook Chill, a private corporation which contracts with TDOC; however, the complaint does not assert a valid claim against Cook Chill. "A private corporation that performs the traditional state function of operating a prison acts under color of state law for purposes of § 1983." *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)); *see also Parsons v. Caruso*, 491 F. App'x 597, 609 (6th Cir. 2012) (corporation that provides medical care to prisoners can be sued under § 1983). The Sixth Circuit has applied the standards for assessing municipal liability to claims against private corporations that operate prisons or provide medical care to prisoners. *Thomas*, 55 F. App'x at 748-49; *Street*, 102 F.3d at 817-18; *Johnson v. Corr. Corp. of Am.*, 26 F. App'x 386, 388 (6th Cir. 2001). CCA "cannot be held liable under a theory of respondeat superior." *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011). Instead, to prevail on a § 1983 claim against CCA, Plaintiff "must show that a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights. *Id.* The complaint does not allege that Turner suffered any injury because of an unconstitutional policy or custom of Cook Chill.

### 4.    Claims on Behalf of all Inmates

Although Turner, at times, complains of actions generally against fellow Muslim inmates, he lacks standing to sue for deprivations of the rights of his fellow inmates. "To state a case or controversy under Article III [of the United States Constitution], a plaintiff must establish standing." *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 133 (2011).

> [T]he irreducible constitutional minimum of standing contains three elements: First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of . . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks, footnote and citations omitted); *see also Lance v. Coffman*, 549 U.S. 437, 439 (2007) (same). "In requiring a particular injury, the Court meant that the injury must affect the plaintiff in a personal and individual way." *Winn*, 563 U.S. at 134 (internal quotation marks and citation omitted). Unless plaintiff suffered an actual injury, he "was not the aggrieved party, [and] he lacks standing" to sue. *Percival v. McGinnis*, 24 F. App'x 243, 246 (6th Cir. 2001); *see also Corn v. Sparkman*, No. 95-5494, 1996 WL 185753, at *1 (6th Cir. Apr. 17, 1996) ("A prisoner cannot bring claims on behalf of other prisoners. A prisoner must allege a personal loss and seek to vindicate a deprivation of his own constitutional rights." (citation omitted)). Therefore, Turner's allegations will only be reviewed based only on the individual injuries he claims, not with regard to any purported injuries to similarly situated prisoners.

5. *Claims against Defendants Schofield, Parris, and Watson as Supervisors*

Defendants Schofield, Parris, and Watson cannot be held liable as supervisors. Under 42 U.S.C. § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. at 676; *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own official actions, violated the Constitution." *Iqbal*, 556 U.S. at 676.

> There must be a showing that the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized,

> approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

*Bellamy*, 729 F.2d at 421 (citation omitted). A supervisory official who is aware of the unconstitutional conduct of his subordinates, but fails to act, generally cannot be held liable in his individual capacity. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 727-28 (6th Cir. 1996); *see also George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not."). Therefore, Defendants Schofield, Parris, and Watson cannot be sued because they failed to take corrective action in response to Plaintiff's grievance. Defendants Schofield, Parris, and Watson also cannot be sued because any of their subordinates violated Tuner's rights.

6.    *Claims for failure to investigate grievances*

The participation of Defendants Schofield, Parker, Parris, Watson, and Gupton in processing or denying Turner's grievances cannot in itself constitute sufficient personal involvement to state a claim of constitutional dimension. *Simpson v. Overton*, 79 F. App'x. 117, 2003 WL 22435653 (6th Cir. 2003); *see also Martin v. Harvey*, 14 F. App'x. 307, 2001 WL 669983, at *2 (6th Cir. 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care."). Section 1983 liability may not be imposed against a defendant for "a mere failure to act" based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d at 300; *Lillard*, 76 F.3d at 727-28.

Similarly, Turner also has no cause of action against these Defendants for failing to investigate or take remedial measures to the extent they were aware of his grievances and complaints. Although failure to investigate may give rise to § 1983 supervisory liability, *see Walker v. Norris*, 917 F.2d 1449, 1457 (6th Cir. 1990) and *Marchese v. Lucas*, 758 F.2d 181, 188 (6th Cir. 1985), the reasoning in *Walker* and the analysis in its progeny teach that evidence of a failure to investigate can establish municipal liability only. In *Dyer v. Casey*, No. 94-5780, 1995 WL 712765, at *2 (6th Cir. Dec. 4, 1995), the Court stated that "the theory underlying [*Marchese*] is that the municipality's failure to investigate or discipline amounts to a 'ratification' of the officer's conduct."

In *Walker*, the Sixth Circuit distinguished *Marchese* because the Court "imposed the broad investigative responsibilities outlined in Marchese upon the Sheriff in his official capacity." *Walker*, 917 F.2d at 1457 ("The Sheriff is sued here in his official capacity and in that capacity, he had a duty to both know and act."). In 1998, the Sixth Circuit affirmed the dismissal of a claim of supervisory liability based on the "failure to investigate," stating:

> Young's claim against defendants McAninch and Goff is based solely on their alleged failure to investigate defendant Ward's behavior towards Young. Although Young stated that defendants McAninch and Goff had knowledge of his allegations against defendant Ward, this is insufficient to meet the standard that they either condoned, encouraged or knowingly acquiesced in the misconduct.

*Young v. Ward*, No. 97-3043, 1998 WL 384564, at *1 (6th Cir. June 18, 1998).

*7.    Claims for retaliation*

Turner claims that Defendants Canada, Yanders, Cadney, Redden, Duncan, Lavender, Gross and Canada retaliated against him for filing grievances. (Compl. at 3, 31, 60, & 61, ECF No. 1.)

"Retaliation on the basis of a prisoner's exercise of his First Amendment rights violates the Constitution." *Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005).

15

A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two — that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc); *see also Scott v. Churchill*, 377 F.3d 565, 569 (6th Cir. 2004) (same); *Smith v. Campbell*, 250 F.3d 1032, 1036 (6th Cir. 2001) (same). "If the plaintiff is able to make such a showing, the defendant then has the burden of showing that the same action would have been taken even absent the plaintiff's protected conduct." *Smith*, 250 F.3d at 1037.

The filing of a non-frivolous grievance is protected conduct under the First Amendment. *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) ("An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf."). A grievance is frivolous if it complains of conduct that is not legally actionable. *Herron*, 203 F.3d at 415 ("Herron's pursuit of legal claims against [prison] officials . . . was protected conduct only to the extent that the underlying claims had merit."); *see Jackson v. Kronberg*, 111 F. App'x 815, 819 (6th Cir. 2004) (grievance that corrections officer has a spider-web tattoo that serves as an "Aryan Nation symbol" not grievable so the filing of the grievance is not protected conduct); *Ziegler v. State of Mich.*, 90 F. App'x 808, 810 (6th Cir. 2004); *Henley v. Pitcher*, 20 F. App'x 396, 397 (6th Cir. 2001); *cf. Smith v. Craven*, 61 F. App'x 159, 162 (6th Cir. 2003) (inmate did not engage in protected conduct by litigating loss of property claim against prison in state court because such a claim is not encompassed within an inmate's First Amendment rights).

There is no indication that Turner was deterred by any defendants' actions in the filing of grievances as the numerous attached grievances indicate. Further, as discussed *supra*, there is no

16

protected conduct from "failure to investigate" a disciplinary, nor is the allegations against Defendant Canada for writing a disciplinary sufficient to find protected conduct.

Regarding Turner's loss of kitchen position, Turner has no claim for the loss of his prison job. "[T] he Constitution does not create a property or liberty interest in prison employment [and] any such interest must be created by state law by 'language of an unmistakably mandatory character.'" *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (quoting *Ingram v. Papalia*, 804 F.2d 595, 596-97 (10th Cir. 1986)) (additional citations omitted). The Sixth Circuit has consistently rejected claims by prisoners based on their loss of, or failure to be assigned to, a prison job. *See, e.g., Shields v. Campbell*, No. 03-5635, 2003 WL 22905312, at *1 (6th Cir. Nov. 26, 2003); *Carter v. TDOC*, 69 F. App'x 678, 680 (6th Cir. 2003); *Jewell v. Leroux*, 20 F. App'x 375, 377 (6th Cir. 2001); *Dellis v. Corrections Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). Because there is no property right in a specific job, likewise there is no property right to a specific wage for work performed. Rather, prison administrators may assign inmates jobs and wages at their discretion. *Altizer v. Paderick*, 569 F.2d 812 (4th Cir. 1978); *Anderson v. Hascall*, 566 F. Supp. 1492, 1494 (D. Minn. 1983); *Chapman v. Plageman*, 417 F. Supp. 906, 908 (W.D. Va. 1976).

> 8.    *Claims about Segregated Inmates*

Turner complaints that they have allowed segregated inmates in the general compound. In general, an inmate does not have a liberty interest in a particular prison, housing assignment, or security classification or in freedom from segregation. *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976); *Montanye v. Haymes*, 427 U.S. 236, 243 (1976); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Newell v. Brown*, 981 F.2d 880, 883 (6th Cir. 1992); *Beard v. Livesay*, 798 F.2d 874, 876 (6th Cir. 1986). *See also Sandin v.*

*Conner*, 515 U.S. 472, 484-87 (1995) (confinement in particular part of prison or jail does not implicate due process absent "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"); *Guile v. Ball*, 521 F. App'x 542, 544 (6th Cir. 2013); *McMillan v. Fielding*, 136 F. App'x 818, 820 (6th Cir. 2005) ("Ten days in lock up, the loss of package privileges, and a $4.00 fine do not constitute an atypical and significant hardship in the context of prison life." (quoting *Sandin*, 515 U.S. at 484)). Since this complaint was filed, Turner is no longer at NWCX; therefore, this claim is moot.

9.    *Claims for Denial of Religious Diet & Issuance of Passes (1st Amendment and RLUIPA)*

"Inmates clearly retain protections afforded by the First Amendment . . . , including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citation omitted). However, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system. . . . The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security." *Id.* (internal quotation marks, alteration and citation omitted); *see also Overton v. Bazzetta*, 539 U.S. 126, 131 (2003) ("The very object of imprisonment is confinement. Many of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner. An inmate does not retain rights inconsistent with proper incarceration."). Thus, "when a prison regulation imposes on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests," *Turner v. Safley*, 482 U.S. 78, 89 (1987), and is not an "exaggerated response to such objectives,'" *id.* (internal quotation marks omitted); *see also Overton*, 539 U.S. at 132.

In this case, Turner complains that he is allergic to the food being served as pork replacement, that WTSP is serving pork meals in the non-pork line, and that he is being refused passes for religious services when he signs up using his Nation of Islam name.

"Prison administrators must provide an adequate diet without violating the inmate's religious dietary restrictions. For the inmate, this is essentially a constitutional right not to eat the offending food item. If the prisoner's diet, as modified, is sufficient to sustain the prisoner in good health, no constitutional right has been violated." *Alexander*, 31 F. App'x at 179 (collecting cases).

Plaintiff has the right to a nutritionally adequate diet that does not require him to consume pork. The complaint alleges that Turner has requested non-pork meat or protein that does not also contain food he is allergic to and he is being denied that request.

Turner also states his claim as a violation of the RLUIPA. The RLUIPA provides, in pertinent part, that

> [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> (1)     is in furtherance of a compelling governmental interest; and
>
> (2)     is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). The Court of Appeals has set forth the standard for evaluating an inmate's claim under the RLUIPA:

> An inmate asserting a claim under the RLUIPA must first produce prima facie evidence demonstrating that his religious exercise was substantially burdened. See § 2000cc-2(b). An action of a prison official will be classified as a substantial burden when that action forced an individual to choose between following the precepts of his religion and forfeiting benefits or when the action in question placed substantial pressure on an adherent to modify his behavior and to violate his beliefs.

The government then bears the burden of persuasion to prove that any substantial burden on the inmate's exercise of his religious beliefs was "in furtherance of a compelling governmental interest" and imposition of the substantial burden on the inmate is "the least restrictive means of furthering that compelling governmental interest." §§ 2000cc–2(b), 2000cc–1(a)(1)–(2). If a substantial burden on religion is found, the RLUIPA employs a less deferential standard—the least restrictive means of furthering a compelling governmental interest—than the standard applied to religious exercise First Amendment claims, a uniform rule having a reasonable relation to legitimate penological interests.

*Hayes v. Tennessee,* 424 F. App'x 546, 554-55 (6th Cir. 2011) (internal quotation marks, alteration and additional citations omitted).

The Court will assume that a pork-free diet is a "religious exercise" within the meaning of the RLUIPA. The term "religious exercise" "includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). Thus, the "RLUIPA bars inquiry into whether a particular belief or practice is 'central' to a prisoner's religion," but it "does not preclude inquiry into the sincerity of a prisoner's professed religiosity." *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005). The Court will also assume that Plaintiff's desire for a pork-free diet is sincere.

The Sixth Circuit has addressed the standard for determining whether a governmental policy or practice substantially burdens the exercise of religion only in the zoning context,[2] where it stated as follows:

The U.S. Supreme Court has not yet defined "substantial burden" as it applies to RLUIPA. Neither does the statute itself contain any definition of the term. The statute's legislative history, however, indicates that the "term 'substantial burden' as used in this Act is not intended to be given any broader interpretation than the Supreme Court's articulation of the concept of substantial burden or [sic] religious exercise." 146 Cong. Rec. S7774-01, 7776 (daily ed. July 27, 2000) (joint statement of Sens. Hatch and Kennedy).

. . . .

---

[2]The statutory provision concerning land use regulations, found at 42 U.S.C. § 2000cc(a)(1), is, on its face, similar to the provision concerning prisoners, found at 42 U.S.C. § 2000cc-1(a)(1).

In short, while the Supreme Court generally has found that a government's action constituted a substantial burden on an individual's free exercise of religion when that action forced an individual to choose between "following the precepts of her religion and forfeiting benefits" or when the action in question placed "substantial pressure on an adherent to modify his behavior and to violate his beliefs," *Sherbert[ v. Verner*, 374 U.S. 398, 404 (1963)]; *Thomas[ v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 717-18 (1981)], it has found no substantial burden when, although the action encumbered the practice of religion, it did not pressure the individual to violate his or her religious beliefs. *See Lyng[ v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 449 (1988)]; *Braunfeld[ v. Brown*, 366 U.S. 599, 605-06 (1961); *see also Episcopal Student Found. v. City of Ann Arbor*, 341 F. Supp. 2d 691, 702 (E.D. Mich. 2004) ("[C]ourts have been far more reluctant to find a violation where compliance with the challenged regulation makes the practice of one's religion more difficult or expensive, but the regulation is not inherently inconsistent with the litigant's beliefs.").*Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 733-35 (6th Cir. 2007); *see also Barhite v. Caruso,* 377 F. App'x 508, 511 (6th Cir. 2010) (applying *Living Water* standard to prisoner's RLUIPA claim).[3]

A prison does not impose a substantial burden on a Muslim inmate's exercise of his religion where he has an alternative to eating non-halal meat. *See, e.g., Cloyd,*, 2012 WL 5995234, at *4 ("[A]s long as a plaintiff is giving an alternative to eating non-halal mean, he does not suffer a 'substantial burden' to his religious beliefs under the RLUIPA."); *Hudson v. Caruso,* 748 F. Supp. 2d 721, 730 (W.D. Mich. 2010) ("Furthermore, there is no 'substantial burden' to plaintiff's religious beliefs under RLUIPA, because they are given alternatives to eating non-halal meat. While plaintiffs may want to have halal meat entrees rather than vegetarian entrees and non-meat substitutes, their food preferences, as prisoners, are limited.") (citations omitted); *cf. Heard v. Caruso*, 351 F. App'x 1, 10 (6th Cir. 2009) ("If Heard's religion requires adherence to a Nation-of-Islam diet, prison officials' refusal to accommodate this diet would impose a substantial burden.").

---

[3]*See also Living Water*, 258 F. App'x at 737 ("We decline to set a bright line test by which to 'measure' a substantial burden and, instead, look for a framework to apply to the facts before us. To that end, we find the following consideration helpful: though the government action may make religious exercise more expensive or difficult, does the government action place substantial pressure on a religious institution to violate its religious beliefs or effectively bar a religious institution from using its property in the exercise of its religion?").

Turner has alleged a plausible claim for violation of the First Amendment and the RLUIPA against Defendants Amonett, Cadney, Redden, Duncan, Parris, Gross, and Lavender.

C.    <u>Motion for Temporary Restraining Order and Preliminary Injunction</u>

On September 24, 2015, Turner filed a Motion for Temporary Restraining Order and Preliminary Injunction which restates the facts and requests for relief provided in his complaint. (ECF No. 8.) In analyzing a motion for preliminary injunctive relief, this Court must balance the following factors:

1) Whether the plaintiff has shown a strong or substantial likelihood or probability of success on the merits;

2) Whether the plaintiff has shown irreparable injury;

3) Whether the issuance of a preliminary injunction would cause substantial harm to others;

4) Whether the public interest would be served by issuing a preliminary injunction.

*Newsom v. Norris*, 888 F.2d 371, 373 (6th Cir. 1989)(citations omitted). A court is required to "make specific findings of fact concerning each of these four factors, unless fewer are dispositive." *Glover v. Johnson*, 855 F.2d 277, 282 (6th Cir. 1988)(citations omitted). Turner's Motion is not in the form of an affidavit and does not certify that notice has been given to the opposing parties. Fed. R. Civ. P. 65. The motion is DENIED.

### III.  CONCLUSION

The Court DISMISSES Turner's complaint against Defendants TDOC, Schofield, Parker, Gupton, Cook Chill, Watson, Canada, and Yanders for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Process will be issued

for Defendants Amonett, Cadney, Redden, Duncan, Parris, Gross, and Lavender on Turner's First Amendment and RLUIPA claim.

It is ORDERED that the Clerk shall issue process for Defendants Amonett, Cadney, Redden, Duncan, Parris, Gross, and Lavender and deliver that process to the U.S. Marshal for service. Service shall be made on Defendants Gross and Lavendar pursuant to Federal Rule of Civil Procedure 4(e) and Tennessee Rules of Civil Procedure 4.04(1) and (10), either by mail or personally if mail service is not effective. All costs of service shall by advanced by the United States.

It is further ORDERED that Turner shall serve a copy of every subsequent document he files in this cause on the attorneys for Defendants Amonett, Cadney, Redden, Duncan, Parris, Gross, and Lavender or on any unrepresented Defendant. Turner shall make a certificate of service on every document filed. Turner shall familiarize himself with Federal Rules of Civil Procedure and this Court's Local Rules.[4]

Turner shall promptly notify the Clerk of any change of address or extended absence. Failure to comply with these requirements, or any other order of the Court may result in the dismissal of this case without further notice.

IT IS SO ORDERED.

**s/James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

---

[4] A copy of the Local Rules may be obtained from the Clerk. The Local Rules are also available on the Court's website at www.tnwd.courts.gov/pdf/content/LocalRules.pdf.